UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

NORMAN T. DAIS, )
 )
    Plaintiff, ) No. 0:11-CV-00096-HRW
 )
V. )
 ) **MEMORANDUM OPINION**
WARDEN J.C. HOLLAND, *et al.*, ) **AND ORDER**
 )
    Defendants. )

\*\* \*\* \*\* \*\* \*\*

On September 6, 2011, Norman T. Dais, confined in the Federal Correctional Institution in Ashland, Kentucky, ("FCI-Ashland") filed a *pro se* motion for emergency injunctive relief, [D. E. No. 1].[1] Dais subsequently filed more letters and pleadings seeking the same emergency injunctive relief. [D. E. Nos. 8 and 10]. For the reasons set forth below, Dais' three motions seeking emergency injunctive relief will be denied, and this proceeding will be dismissed without prejudice.

**CLAIMS AND RELIEF SOUGHT**

Pursuant to the Bureau of Prisons ("BOP") Program Statement 1315.07, *Legal Activities, Inmate*, the BOP has implemented a Centralized Electronic Law Library

---

[1] The Clerk of the Court docketed Dais' submission as a civil rights action under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

("ELL") in its prisons facilities. Dais alleged that in January 2010, the ELL was installed in the FCI-Ashland law library, whereby all pleadings and other court documents filed in the criminal cases of all inmates are now electronically accessible by other inmates, and that inmates can now ascertain who among them has either served as a government informant or has otherwise provided assistance to law enforcement in criminal cases.

Dais alleged that the electronic access to such confidential information subjects the inmates who have assisted law enforcement, such as he, to physical harm at the hands of other inmates.[2] Specifically, Dais alleged that on August 9, 2011, an unidentified FCI-Ashland inmate assaulted him after learning, through the ELL, that Dais had cooperated with the government during his South Carolina federal criminal proceeding.[3] On that same date, Dais submitted an "Inmate Request to Staff Member" complaining about the ELL.

On August 17, 2011, Holland responded by stating that if he (Dais) was

---

[2] Dais is serving a 294-month sentence for illegal transport of firearms by a convicted felon pursuant to a guilty plea he entered in *United States v. Norman T. Dais*, Criminal No. 4:03-0383-TLW-1, (D. S.C.). On May 2, 2006, Dais' conviction was affirmed on direct appeal in *United States v. Dais*, 178 F. App'x. 253 (4th Cir. 2006).

[3] *See* the September 14, 2011, "Petition for Writ of Mandamus" which Dias filed in a related proceeding in this Court, 11-CV-99-HRW, (at D. E. No. 1, p. 2). The 11-CV-99-HRW proceeding was administratively terminated and consolidated with this case by Order of September 21, 2011.

concerned about his safety, he "...should immediately contact any staff member and request protective custody." [D. E. No. 10-1]. Holland further stated:

> The only case law which is not included on the ELL inventory is marked by federal judges as sealed or otherwise unpublished. All other court proceedings and published decisions are public information and retained as part of the public court records.
>
> You may request to your sentencing court directly to have your case sealed or otherwise unpublished. The Bureau of Prisons would not be involved in this process.

[*Id.*].

Thereafter, Dais was apparently placed in protective custody, because in his October 6, 2011, "Second Motion for Emergency Injunctive Relief," Dais stated that he was in protective custody, but that "M." Lester, his Unit Manger, has informed him that he (Dais) would be returned to the general population because Lester could not verify a threat to Dais' safety. [D. E. No. 8, p. 1].

Dais seeks an emergency order, either (a) enjoining FCI-Ashland inmates' access to the ELL, or (b) transferring him to another federal prison where his government assistance history will be protected. *See* D. E. Nos. 1, 8, and 10. In his "Third Motion for Emergency Injunctive Relief," Dais stated that:

> "Petitioner [Dais] has served Both the Warden J.C. Holland at P.O. Box 888, Ashland [sic] KY 41105 and Federal Bureau of Prisons Acting Director Thomas R. Kane at both the following address Legal Center 3301 Leestown Road Lexington, Ky 40511, Office of the General

3

Counsel 320 First ST NW Washington, DC 20534.

[D. E. No. 10, p. 1].

## DISCUSSION

As Dais has been granted *in forma pauperis* status and is asserting claims against government officials, and seeking injunctive relief, the Court now screens his submissions pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B). Both of these sections require a district court to dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief. *Id.*; *see also McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

1. <u>Emergency Injunctive Relief Not Warranted</u>

In this case, Dais seeks emergency, or preliminary, injunctive relief. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't.*, 305 F.3d 566, 573 (6th Cir. 2002). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

"There are four factors that are particularly important in determining whether

a preliminary injunction is proper." *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No.1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir. 1991). They are:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005).

Although no single factor is controlling when determining whether a preliminary injunction should issue, the likelihood of success on the merits is often the predominant consideration. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ( "[A] finding that there is simply no likelihood of success on the merits is usually fatal."); *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir.1997) ("[W]hile, as a general matter, none of [the] four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

In this case, a preliminary injunction is not warranted because Dais has failed demonstrate a strong likelihood of success on the merits of his claim that he is danger of imminent bodily injury because of information that may be available to other FCI-Ashland inmates through the ELL. Dais's allegation, that he was assaulted by another inmate on August 9, 2011, allegedly because of information that inmate learned

through ELL about his (Dais') government assistance, is questionable. First, in his August 17, 2011, response to Dais' Request to Staff, Warden Holland did not mention an alleged inmate attack on Dais, and it is reasonable to assume that had Dais mentioned such an alleged occurrence in his BP-8 Request to Staff, Warden Holland would have at least acknowledged the allegation, and would have most likely addressed such an important allegation.

Second, Dais did not attach his BP-8 "Inmate request to Staff Member," which would have shown whether he mentioned having been assaulted by another inmate because of information, obtained through ELL, disclosing his assistance to the government in his criminal proceeding. Since Dais is asking this Court to interfere with prison administration matters at FCI-Ashland, and is seeking an emergency extraordinary injunctive relief, it would have behooved him to provide a copy of his "Inmate Request to Staff." Thus, Dais' allegations do not amount to a strong showing on the merits, which, as noted, is one of the most important criteria. *First Techn. Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 644 (6th Cir.1993); *Fort Wayne Women's Health Org. v. Brane*, 734 F.Supp. 849 (N.D. Ind. 1990).

Further, before filing a federal suit challenging any conditions of confinement in BOP facilities, federal inmates must exhaust their claims through the BOP's

administrative remedy procedure, 28 C.F.R. §§ 542.13-19.[4] *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

In this case, Dais broadly stated that he "served" Warden Holland and BOP Director Thomas Kane, but he does not explain what form that "service" took, *i.e.*, whether he simply wrote them letters, whether he sent them copies of the pleadings he filed in this proceeding, or whether he took some other unspecified action to notify them of his claims. Dias clearly sought an informal remedy by filing a BP-8 request to the FCI-Ashland staff, to which Warden Holland responded on August 17, 2011, but it does not appear that Dais then submitted a formal BP-9 "Request for Administrative Remedy" to Warden Holland as required by 28 C.F. R. §542.14(a);

---

[4]

The multi-step administrative remedies available to inmates confined in BOP institutions are set out in 28 C.F. R. §542.10-.19. Section 542.13(a) demands that an inmate first informally present his complaint to the staff [BP-8 form], thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request to the Warden [BP-9]. *See* §542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel [BP-11]. *See* §542.15.

The administrative procedure includes established response times. §542.18. As soon as an appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days. Only one extension of time of 20-30 days, in writing, is permitted the agency. If the inmate does not receive a response within the allotted time, including extension, he may consider the absence of response as a denial at that level. *Id.*

that he submitted a BP-10 appeal to the BOP Regional Director, or having been unsuccessful at those levels, that he submitted a final BP-11 appeal to the BOP Regional Director as required by 28 C.F.R. §542.15.

It further appears unlikely that Dais even pursued the shorter, two-step administrative remedy procedure sent forth in 28 C.F.R. § 542.14(d)(1), which is available to federal prisoners who believe that they have "sensitive" claims. Pursuant to § 542.14 (d)(1), a federal prisoner who believes his "safety or well-being would be placed in danger if the Request became known at the institution," circumvents the prison staff and submits his remedy request directly to the appropriate BOP Regional Director. He then submits only one appeal, to the BOP Central Office. Again, Dais' vague and broadly-worded statement, that he "served" Warden Holland and BOP Director Kane - -not the BOP Regional Director- - indicates that he did not first submit an administrative remedy to the BOP's Mid-Atlantic Regional Director and then appeal to the BOP Central Office.

As Dais Warden Holland denied Dais' BP-8 "Inmate Request to Staff" on August 17, 2011, and as Dais filed this action only three-weeks later, on September 6, 2011, it is obvious from the face of Dais' "First Motion for Emergency Injunctive Relief," [D. E. No. 1], and his two subsequent motions seeking the same relief, [D. E. Nos, 8 & 10], that he *could not* have administratively exhausted his claims under

*either* the two-step process of 28 C.F.R. § 542.14(d)(1), or the three-step process set forth in §§ 542.14(a),(b), and 542.15.

When the affirmative defense of failure to exhaust appears on the face of the complaint, a district court can *sua sponte* dismiss a Complaint on the grounds that it fails to state a claim upon which relief can be granted. *Jones v. Bock*, 549 U.S. 199, 214-15 (2007); 28 U.S.C. § 1915A(b)(1)); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007). This Court, and other district courts in this circuit, have held that *sua sponte* dismissal of a prisoner civil rights action is warranted where the failure to exhaust his claims is apparent from the face of the complaint. *Walker v. Baker*, No. 6:10-CV- 68-ART (E.D. Ky.) [R. 9 & 10, June 24, 2010]; *Smith v. Lief*, No. 5:10-00008-JMH, 2010 WL 411134 at *4 (E.D. Ky. January 27, 2010); *Gunn v. Kentucky Depart. Of Corrections*, No. 07-103, 2008 WL 2002259, * 4 (W.D. Ky. May 7, 2008); *Deruyscher v. Michigan Dept. of Corrections Health*, No. 06-15260-BC, 2007 WL 1452929, at *3 (E.D. Mich. May 17, 2007).

This rule equally applies to motions seeking emergency, or preliminary, injunctive relief. In *Smith v. Thompson*, 638 F. Supp.2d 754, 757 (E.D. Ky. 2009) this Court refused to grant a prisoner's motion seeking preliminary injunctive relief because the prisoner: (a) had not complied with service requirements of Federal Rule

of Civil Procedure 65,[5] and (b) had failed to show a substantial likelihood of success on the merits. *See also Rouse v. Hiland*, 5:08CV-P186-R, 2010 WL 724651, at *2 (W.D. Ky. February 25, 2010) (denying prisoner's request for preliminary injunctive relief, *sua sponte*, based on his vague and conclusory allegations of harm, and his failure to administratively exhaust his prison-condition claims).

"Allowing inmates to bring unexhausted claims for injunctive relief to federal court would short-circuit the intent of Congress by denying prison officials the opportunity to address these complaints internally." *Alba v. Randle*, 5:10cv49–DCB, 2010 WL 6332058, at *2 (S. D. Miss. November 9, 2010) (quoting *Howe v. Polunsky Unit*, No. 9:08cv142, 2010 WL 1268186, at *2 (E.D. Tex. Feb. 3, 2010)).

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81,

---

[5]

The Federal Rules of Civil Procedure permit a court to enter a temporary restraining order without prior notice and an opportunity to be heard by the adverse party only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

83–84 (2006); *see also Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008).

Given the absence of responses from the BOP Mid-Atlantic Regional Director and the BOP Central Office, Dais can show no more that a mere possibility of success, which is insufficient to justify an emergency injunction. *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261, n.4 (6th Cir. 1977). A plaintiff must show a "strong" or "substantial" likelihood of success. *See Summit County Democratic Cent. and Executive Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004).

For the same reasons, Dais has not at this time established that he will suffer irreparable harm if the Court denies his motion and refuses either to order Warden Holland either to (1) terminate other FCI-Ashland prisoners' access to the ELL, or (2) transfer Dais to another BOP prison. As to the latter consideration, most other BOP institutions already utilize the ELL, so it is unlikely that a transfer would assist Dais, even if Warden Holland ordered such relief. Irreparable injury is the single most important prerequisite to consider when ruling on a motion for a preliminary injunction. *See Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also Lexington-Fayette Urban County Gov't v. Bellsouth Telcoms., Inc.*, 14 F. App'x. 636, 639 (6th Cir. 2001). Without it, the underlying purpose for a preliminary injunction is lost.

The third factor to consider when determining if injunctive relief is warranted

is whether harm would result to others if the preliminary injunction is entered. When a prisoner seeks an order enjoining prison officials, a district court is required to proceed with the utmost care, recognizing the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438 (6th Cir. 1984). Dais has not fully completed any of the available administrative process remedies, and he has not established a likelihood of success on the merits. Given those deficiencies, FCI-Ashland administrators would be adversely affected by an injunction directing them to take the action which Dais has requested.

Further, Dais' demand that the ELL be terminated at FCI-Ashland could adversely affect the rights of other FCI-Ashland inmates, who have a First Amendment right to an adequate law library containing current legal information. The legal resources which ELL provides assists prisoners in pursuing their *pro se* civil rights cases, their *pro se* habeas corpus petitions, and to a lesser extent, their criminal appeals, although prisoners are appointed appellate counsel in criminal cases if they can not afford private counsel. Thus, depriving other FCI-Ashland inmates of a valuable legal resource, which the BOP has approved and widely implemented, might in some cases infringe on their First Amendment right of access to the courts.

Fourth, the interests of third parties, and the public at large, would not be served by issuing an emergency injunction. The Supreme Court has explicitly

rejected heightened judicial scrutiny of prison policies. Rigorous scrutiny, the Court has noted, is simply "not appropriate for consideration of regulations that are centrally concerned with the maintenance of order and security within prisons." *Thornburgh v. Abbott*, 490 U.S. 401, 409-10 (1989). Usually, the interests of identifiable third parties and the public at large weigh against granting an injunction because judicial interference in prison administration matters is necessarily disruptive, and granting extraordinary relief measures in the prison context, absent a sufficient showing of a violation of constitutional rights, goes against the public welfare. *See Clay v. Isard*, No 09-00209, 2010 WL 565121, at *2 (W. D. Mich., February 10, 2009).

### 2. Dismissal of Action

Having adjudicated and rejected Dais' sole request- motions seeking an emergency order and/or emergency injunctive relief - there is nothing further to address or consider. Courts, including this one, have consistently dismissed civil rights actions after denying a motion for preliminary injunction, where that motion was the only relief sought. *See Abernathy v. Patterson*, 295 F.2d 452, 456 (5th Cir. 1961) (affirming dismissal when district court denied injunctive relief, the sole relief requested); *Cohen v. Dewalt*, No. 08-CV-288-JBC (E. D. Ky.) (Order, November 7, 2008, [R.13, p. 5], (dismissing *Bivens* action where the court had, by prior Order,

denied the prisoner's motion seeking emergency injunctive relief, which was the only relief he had sought); *Lovaas v. Osen*, No. C-06-66-BU, 2007 WL 686689, *5 (D. Mont. March 5, 2007) (same); and *F.D.I.C. v. Lenz*, 323 F. Supp.2d 342, 346 (D. Conn. 2004) (dismissing action after denying the plaintiff's sole request for a preliminary injunction).

Accordingly, dismissal of this action is warranted. The dismissal of Dais' motions seeking emergency injunctive relief is without prejudice to him properly exhausting his claims and, if necessary, filing another *Bivens* action at the conclusion of the administrative remedy process.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiff Norman Tyrone Dais' "First Motion for Emergency Injunctive Relief," [D. E. No. 1 ], is **DENIED**;

(2) Dais' "Second Motion for Emergency Injunctive Relief," [D. E. No. 8], is **DENIED**;

(3) Dais' "Third Motion for Emergency Injunctive Relief," [D. E. No. 10], is **DENIED**;

(4) If Dais intends to file a civil rights action asserting Eighth Amendment claims, or any other conditions of his confinement at FCI-Ashland, he must fully

exhaust such claims through the BOP's administrative remedy procedures and either pay the $350.00 filing fee or seek permission to proceed *in forma pauperis*;[6]

(5) This proceeding is **DISMISSED** and stricken from the Court's active docket, and

(6) Judgment in favor of the named Defendants, J.C. Holland, Warden of FCI-Ashland, and the BOP.

This 20th day of October, 2011.



Signed By:
Henry R. Wilhoit Jr.
United States District Judge

---

[6] If, after fully exhausting the claims he asserted in this action, Dais files a future *Bivens* civil rights action, he *may* qualify for a waiver of the $350.00 filing fee, but only if he asserts the *same* claims he raised in this action. *See Owens v. Keeling*, 461 F.3d 763, 772-73 (6th Cir. 2006) The *Owens* fee-waiver will not apply if Dais expands the scope of his claims and asserts additional or new civil rights claims.